Judgment rendered July 15, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,978-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

ROBERT WAYNE MATHEWS                        Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 395,489

Honorable Christopoher T. Victory, Judge

* * * * *

LOUISIANA APPEALS and                   Counsel for Appellant
WRIT SERVICE
By: Remy V. Starns
    Douglas Daniel Brown


JAMES EDWARD STEWART, SR.               Counsel for Appellee
District Attorney

TOMMY J. JOHNSON
COURTNEY RAY
Assistant District Attorneys

* * * * *

Before STEPHENS, HUNTER, and MARCOTTE, JJ.

**MARCOTTE, J.**

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Christopher T. Victory presiding. Robert Wayne Mathews ("Mr. Mathews") was found guilty of sexual battery, in violation of La. R.S. 14:43.1. The trial court sentenced him to seven years' imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Mr. Mathews now appeals his conviction and sentence. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On May 22, 2023, Mr. Mathews was charged by bill of information with one count of sexual battery upon his 13-year-old step-granddaughter, G.H., in violation of La. R.S. 14:43.1. The bill was subsequently amended to reflect an offense date range of December 31, 2022, through May 8, 2023. Mr. Mathews waived his right to trial by jury and elected trial by judge. The matter proceeded to a bench trial on September 11, 2025, where the following evidence was adduced.

G.H. was born on September 28, 2009. As of December 31, 2022, she was 13 years of age and she was more than three years younger than Mr. Mathews. Mr. Mathews occupied and exercised a position of supervision and control over G.H. during periods when she and her sisters stayed in his home. G.H. testified Mathews stated numerous times that she was his "favorite."

K.H., G.H.'s mother, described G.H. as a child who does what she is supposed to do. G.H. was a sophomore in high school at the time of trial and a straight "A" student. Carolyn Jeanette Mathews ("Mrs. Mathews"), Mr. Mathews' wife and G.H.'s grandmother, described G.H. as someone

who is not confrontational. Upon learning of Robert's violations, K.H. reported the crime to law enforcement.

Caddo Parish Sheriff's Deputy Sergeant Ray Saunders ("Sgt. Saunders") commenced the investigation by referring the children to the Gingerbread House for forensic interviews. Sgt. Saunders attempted to interview Mr. Mathews, but after denying any wrongdoing, he invoked his right to counsel. Sgt. Saunders' investigation did reveal that Mr. Mathews had previous criminal charges in 2002 of felony carnal knowledge of a juvenile and indecent behavior with a juvenile resulting in a plea of misdemeanor carnal knowledge of a juvenile.

G.H. testified at the trial. She described in detail, through the Gingerbread House interview and her in-court testimony, the sexual acts perpetrated upon her by Mr. Mathews. G.H. provided explicit descriptions of Mr. Mathews grabbing her hand and guiding it to his penis as well as touching her "down there," describing her vaginal area. The court inquired of G.H. about the number of times Mr. Mathews touched her "down there" and G.H. replied "about 10 times." She testified that the locations where the illegal touching occurred were sometimes in his truck and sometimes at his house. On May 8, 2023, G.H. testified that Mr. Mathews coaxed her to lean closer while riding in his truck when he kissed her on her lips. She described this incident as "the breaking point."

K.H. explained that G.H. told her quite a bit about Mr. Mathews' acts before the police arrived. G.H. was not sure about the dates, but she could tell K.H. about the acts. K.H. noted G.H. was visibly upset at that moment, pleading with her mother not to send her back to Mr. Mathews' house. Describing G.H. as a quiet and respectful child, K.H. testified that G.H.

seemed very clingy and distant at the time of reporting the incident to her and did not want to leave her side. G.H. told her mother and wrote a letter to her describing Mr. Mathews showing inappropriate videos, touching her inappropriately, kissing her on her lips, and telling her not to say anything about it. G.H. said she was scared.

G.H. explained that the first instance happened when it was just the two of them in his truck and he touched her buttocks. She went on to state how in the following weeks and months Mr. Mathews would touch her vaginal area and breasts while telling her to keep it a secret. On May 8, 2023, G.H. said Mr. Mathews showed her anime porn and stated that he wanted to do the same to her.

Jordan Hughes, a forensic interviewer with the Gingerbread House, delved into the specifics of what Mr. Mathews did to G.H., and her video interview of G.H. was played in court. In her interview with Ms. Hughes, G.H. started with the first occurrence where G.H. leaned over in Mr. Mathews' truck to show him something on her phone, and he put his hand down her pants, squeezing and rubbing her right buttocks. More specifics came when G.H. described the kiss when Mr. Mathews told her to come closer. She demonstrated how he rubbed her thigh and pulled her shirt up declaring she had a beautiful body. Ms. Hughes continued to question details of the criminal touching at Mr. Mathews' home while she sat in the chair next to him in the house. G.H. vividly described Mr. Mathews touching her breast as well as touching her "down there" while in a chair next to him under a blanket.

G.H.'s sisters, R.H. and D.H., were also interviewed at the Gingerbread House. R.H. and D.H. testified at trial. R.H. recanted her

statements in the Gingerbread House interview. She said that in fact she lied and did not see anything. R.H. explained that she was fearful of losing her "Granny." She also testified that G.H. did not tell her what to say at the Gingerbread House interview. D.H., G.H.'s youngest sister, testified that she told the truth in the Gingerbread House interview and saw Mr. Mathews touching G.H. in the truck and at the house.

Mrs. Mathews testified on behalf of her husband in the defense's case. She stated she did not work on December 31, 2022, thus G.H.'s statement that the first incident happened on that date when G.H. and Mr. Mathews were going to pick her up from work could not have happened on that date. Through Mrs. Mathews, the defense introduced a timesheet from her employer AEP/SWEPCO indicating that she did not work on that day. Mrs. Mathews further declared that she had never seen her husband do anything inappropriate with G.H. She admitted that G.H. and Mr. Mathews being in a chair together under a blanket was something he should not do, but she denied anything inappropriate happened that she saw. Mrs. Mathews did admit that her husband would pick up the children on his own and that he would sit in a chair with G.H. with both under a blanket. She further disclosed that her husband had not informed her of his conviction of carnal knowledge of a juvenile in 2002. She said he told her that he was only accused of "messing with" a 15-year-old girl but had done nothing wrong.

Mr. Mathews testified in his own defense. He acknowledged that he pled guilty to misdemeanor carnal knowledge of a juvenile in 2005 for having sex with two teenage girls. He denied kissing G.H. in a sexual manner, denied touching her genitals, and denied making G.H. touch his genitals. In support of his denial, Mr. Mathews also claimed that his truck

4

was in the shop at the time G.H. claimed the first incident occurred on December 31, 2022. Through Mr. Mathews, the defense introduced service records from Jimmy Granger Ford indicating that his truck was being serviced at that time. Under cross-examination, Mr. Mathews struggled to identify G.H. as a liar about her complaints before stating that the touching parts were untrue. Mr. Mathews also contended that the sexual battery complaints were fabricated by G.H. in response to his confronting her about not dating girls in March 2023, approximately six weeks before the May 8, 2023, incident.

Pastor Roger Morton, Dawn Pickerel, and Curtis David Pickerel testified to Mr. Mathews' good character and his consistent church attendance.

At the close of evidence, the trial court found Mr. Mathews guilty as charged, stating: "This essentially comes down to the credibility of [G.H.] versus the defendant, Mr. Mathews. The court finds that [G.H.] is credible. I never had a doubt about that following, listening to her testimony. And I find that her mother's testimony is credible. I find that the state proved their case beyond a reasonable doubt, and I do find that Mr. Mathews is guilty of sexual battery."

On October 1, 2025, the trial court sentenced Mr. Mathews to seven years at hard labor without benefit of probation, parole, or suspension of sentence. The trial court also designated the offense a crime of violence under La. R.S. 14:2(B) and ordered Mr. Mathews to register as a Tier I sex offender for 15 years under La. R.S. 15:542. On October 6, 2025, Mr. Mathews filed a motion to reconsider sentence, which the trial court denied by written order.

Mr. Mathews appeals.

## DISCUSSION

*Sufficiency of the Evidence*

For his first assignment of error, Mr. Mathews contends that the evidence was insufficient to convict him of sexual battery under La. R.S. 14:43.1. He asserts that G.H.'s account of the first instance of inappropriate touching is in irreconcilable conflict with unrebutted physical and documentary evidence. Mr. Mathews points out the fact that his wife's payroll timesheet from SWEPCO proved she was not at work on December 31, 2022, which was a Saturday, so the alleged sexual abuse could not have happened that day and could not have happened while Mr. Mathews and G.H. were waiting for her in SWEPCO's parking lot. He also notes the records from Jimmy Granger Ford showing that his truck was inoperable at the time G.H. alleged the abuse in the truck happened.

Mr. Mathews also contends that G.H.'s own testimony contains material internal contradictions. He claims that she admitted to altering her own handwritten statement to her mother and he points out inconsistencies between G.H.'s statement to Gingerbread House and her trial testimony regarding the timing of when pornographic anime images were allegedly shown to her by him. Mr. Mathews also notes that G.H. expressed on the record a motive to retaliate against him after she told him she was pursuing a relationship with another girl and he told her that "girls don't go with girls" in his household.

Mr. Mathews also asserts that G.H.'s account is in irreconcilable conflict with the only other putative eyewitness the state offered, her 11-year-old sister D.H. He notes discrepancies about whether a blanket was

6

present during one instance of alleged abuse.  Mr. Mathews also points to D.H.'s testimony that the truck never stopped at any train crossing on May 8, 2023, the day when G.H. alleged he rubbed her thigh, lifted her shirt, and kissed her on the lips in the truck while stopped at a train crossing.  He also notes discrepancies between D.H.'s testimony and G.H.'s testimony about where and when instances of alleged abuse occurred.

The state argues that the evidence at trial was sufficient to convict Mr. Mathews of sexual battery in violation of La. R.S. 14:43.1.  The state cites Louisiana law holding that the testimony of the victim of sexual assault is sufficient to convict a defendant, and notes that G.H. testified that Mr. Mathews committed sexual battery upon her on numerous occasions by touching her buttocks, her thighs, her vaginal area, and her breast.  Although G.H. was of the belief that the first occurrence was on December 31, 2022, the state argues that her testimony about the date it occurred does not suggest the evidence of the elements of the offense of sexual battery is somehow irreconcilable.  Regarding Mr. Mathews' claim that his truck was inoperable at that time, the state points out that the invoices introduced by the defense do not actually show that the truck was in storage.  Rather, the only testimony that the truck was in storage came from Mr. Mathews.

As far as the timing of when the pornographic anime images were shown to G.H. by Mr. Mathews, the state again notes that the date of occurrences is not an element of the offense and does not constitute an internal contradiction that prohibits the single witness rule.  The state also notes that G.H. descriptively explained the images shown to her by Mr. Mathews in her Gingerbread House interview.

7

The state also takes issue with Mr. Mathews' claim that G.H. had "a specific and concrete motive to be angry at Mr. Mathews." The state points out that, in fact, G.H. testified that Mr. Mathews never confronted her about having girlfriends, and that it was only his own self-serving testimony that made such a claim.

The state contends that the evidence viewed in the light most favorable to the prosecution proved that Mr. Mathews touched the breast and vagina of G.H., thereby committing the crime of sexual battery.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now codified in La. C. Cr. P. art. 821, does not afford the appellate court with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Johnson*, 55,254 (La. App. 2 Cir. 8/9/23), 370 So. 3d 91.

Appellate courts neither assess the credibility of witnesses nor reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, the reviewing court affords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422. Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a

determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writs denied*, 02-2595 (La. 3/28/03), 840 So. 2d 566, 02-2997 (La. 6/27/03), 847 So. 2d 1255, *cert denied*, 540 U.S. 1185, 124 S. Ct. 1404, 158 L. Ed 2d 90 (2004).

In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. McFarlin*, 54,754 (La. App. 2 Cir. 1/25/23), 354 So. 3d 888; *State v. Gullette*, 43,032 (La. App. 2 Cir. 2/13/08), 975 So. 2d 753. This principle is equally applicable to victims of sexual assault; such testimony alone is sufficient even when the state offers no medical, scientific, or physical evidence to prove the commission of the offense by the defendant. *State v. Walker*, 55,255 (La. App. 2 Cir. 8/9/23), 369 So. 3d 488.

Pursuant to La. R.S. 14:43.1(A)(1) and (2), sexual battery is defined, in pertinent part, as the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, when the offender acts without the consent of the victim or when the victim has not yet attained fifteen years of age and is at least three years younger than the offender. *State v. Coliston*, 56,332 (La. App. 2 Cir. 8/27/25), 420 So. 3d 284; *State v. Naulty*, 24-0118 (La. App. 1 Cir. 2/27/25), 406 So. 3d 1231.

Accordingly, to convict Mr. Mathews, the state had to prove that (1) the victim was younger than fifteen years old; (2) the defendant was at least three years older than the victim; and (3) the defendant touched the anus or genitals of the victim with any part of his body. The fact that G.H. was

9

under the age of fifteen when these incidents occurred is undisputed. It is further undisputed that Mr. Mathews is more than three years older than G.H. Therefore, the state only needed to prove that the touching element was satisfied beyond a reasonable doubt.

At trial, G.H. testified that Mathews committed sexual battery upon her on numerous occasions by touching her buttocks, her thighs, her vaginal area, and her breast. Although she was of the belief that the first occurrence was December 31, 2022, her testimony does not suggest the evidence of the elements of the offense is somehow irreconcilable.

In *State v. Dyas*, 53,597 (La. App. 2 Cir. 1/13/21), 309 So. 3d 955, *writ denied*, 21-00256 (La. 5/4/21), 315 So. 3d 222, finding Dyas guilty of sexual battery, this court found that inconsistencies in text messages by the victim did not warrant the rejection of the victim's testimony, where her testimony and Gingerbread House interview were consistent regarding the nature of the touching. As Sgt. Saunders explained in his testimony, children are often inaccurate on dates that events transpired. Even K.H. testified that G.H. could not identify dates on the day G.H. told her, but G.H. was certain of the sexual battery that occurred.

Although a victim's testimony is contradictory, it can support a conviction of sexual battery if it is clear with respect to the essential elements of sexual battery. *State v. Guidry*, 95-254 (La. App. 3 Cir. 11/2/95), 664 So. 2d 698. Here, the victim's testimony was direct evidence sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Mr. Mathews was guilty of every essential element of the crime of sexual battery.

We also note that D.H. testified she saw Mr. Mathews move his hand to G.H.'s crotch area and then to her chest. D.H. was sure of what she saw in the truck that day and what she saw in the living room. She was not sure of the day the incidents occurred and could not remember if G.H. sat in Mr. Mathews' chair with a blanket on her but admitted she did not see things happen every time G.H. sat in his chair and there could be times G.H. was in the living room and she did not know about it. The fact that she may have gotten her dates wrong and may not have been accurate about the presence of a blanket does not amount to internal contradiction or irreconcilable conflict with the physical evidence. Any inconsistency in the testimony and Gingerbread House interview of D.H. does not rise to grounds for a reversal.

Mr. Mathews makes much of the fact that R.H. admitted she lied in her Gingerbread House interview. However, the testimony and Gingerbread House interview of R.H. were of no evidentiary value to the court in deciding guilt one way or another.

The jurisprudence is clear that testimony of the victim of sexual assault is alone sufficient to convict the defendant when the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. In this case, the state proved the elements of sexual battery. We do not find the presence of internal contradiction or irreconcilable conflict with the testimony proving the elements of the offense. The evidence viewed in the light most favorable to the prosecution proved Mr. Mathews touched the breast and vagina of G.H., thereby committing the crime of sexual battery. We decline to assess the credibility of the witnesses or reweigh the evidence. This assignment of error lacks merit.

11

*Excessive Sentence*

For his second assignment of error, Mr. Mathews argues that his sentence is unconstitutionally excessive. He notes that his seven-year sentence amounts to 70 percent of the ten-year statutory maximum. He claims such a sentence is excessive because he is not the worst offender, and this is not the worst offense. Mr. Mathews highlights the fact that he has been married to the same woman for 19 years, that he attends church regularly, that he is the primary caregiver for his elderly mother, and that he has a loving relationship with his grandchildren. Mr. Mathews also claims that the instant offense is not that severe because there was no penetration, no overt threats, no physical injuries, and no weapons used.

Mr. Mathews also contends that the trial court's express reliance on a 23-year-old misdemeanor conviction as an "aggravating circumstance" produced a sentence grossly disproportionate to the offense and the offender. Since this is his first felony conviction, Mr. Mathews asserts that he should have received a more moderate sentence, rather than the one he claims was artificially enhanced by the trial court based on his previous conviction for sexual relations with two minor girls.

The state argues that the midrange sentence imposed by the trial court was appropriate under the circumstances. The state notes that the record clearly shows the trial court properly considered the factors in La. C. Cr. P. art. 894.1, and found several aggravating circumstances, including the fact that Mr. Mathews used his position as a step-grandfather in the household to facilitate the crime. The state also points out that the court noted his previous conviction involving sexual relations with two minor girls.

In reviewing a sentence for excessiveness, this court uses a two-step process. First, the record must reflect that the trial court took the criteria set forth in La. C. Cr. P. art. 894.1 into account. The goal of La. C. Cr. P. art. 894.1 is to articulate an adequate factual basis for the sentence, not rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982). The trial court is not required to list every aggravating or mitigating circumstance, so long as it adequately considered them in particularizing the sentence to the defendant. *State v. Smith*, 433 So. 2d 688 (La. 1983). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. These elements are consistently utilized by this court when evaluating a sentence for constitutional excessiveness. *See State v. McCarthy*, 55,038 (La. App. 2 Cir. 6/28/23), 366 So. 3d 1266; *State v. McFarlin*, 54,754 (La. App. 2 Cir. 1/25/23), 354 So. 3d 888, *writ denied*, 23-00261 (La. 10/17/23), 371 So. 3d 1078.

The trial court has wide discretion in the imposition of sentences within the statutory limits, and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Trotter, supra*. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. On review, an appellate court does not determine whether another

13

sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Trotter, supra; State v. Bell, supra.*

The second step in reviewing a sentence for excessiveness is a determination of whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Trotter, supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

Here, sentencing began with the trial judge acknowledging he reviewed Mr. Mathews' sentencing memorandum. When offered the opportunity to speak, Mr. Mathews continued to profess his innocence, exhibiting no remorse. In determining the proper sentence, the court considered La. C. Cr. P. art. 894.1(A) and (B), finding all three factors of part (A) applicable. Regarding part (B), the trial court specified (B)(4), in using his position as a step-grandfather in the household to facilitate the crime, as well as (B)(21), any other aggravating circumstance, applicable. More particularly, the court noted his previous conviction involving sexual relations with two minor girls. Additionally, Mr. Mathews had a simple battery arrest in 2005. The fact the court found no mitigating factors applicable without further explanation does not constitute an abuse of discretion in sentencing. *See State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332.

The sentence imposed here is not a near-maximum sentence. It is at best a midrange sentence. Courts have upheld similar sentences for defendants convicted of sexual battery. For example, in *State v. Kelson*, 23-274 (La. App. 5 Cir. 12/27/23), 379 So. 3d 779, the court found the trial court did not abuse its discretion in imposing an eight-year sentence for one count of sexual battery. In *Kelson*, the victim testified that the defendant, her uncle, held a sleepover in his room and sexually abused her. The victim expressed in her victim impact statement that the defendant took advantage of her trust in him. The court took into consideration the victim's young age and vulnerable state. Also, in *State v. Rubio*, 22-205 (La. App. 5 Cir. 12/28/22), 357 So. 3d 413, the appellate court upheld an 8-year sentence of a sexual battery charge involving a juvenile.

The instant case does not involve an abuse of the wide discretion afforded a trial judge in sentencing, nor does the 7-year sentence imposed upon a second-time offender of sexual crimes against juveniles shock the sense of justice when viewed in a light of the harm done to society. This assignment of error is without merit.

## CONCLUSION

For the reasons expressed, Mr. Mathews' conviction and sentence are affirmed.

**AFFIRMED.**